AO 106 (Rev. 04/10)  Application for a Search Warrant

PG for AUSA Cabral



# UNITED STATES DISTRICT COURT

### for the
#### Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| | ) Case No.   '19 MJ 9071 |
| One Samsung Galaxy Note 8 Cellular Phone | ) |
| SM-N950U, FCC ID A3LSMN950U | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

### SEE ATTACHMENT A
### (INCORPORATED HEREIN)

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B
### (INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 21 USC §§ 952 and 960 | Importation of Controlled substances |

The application is based on these facts:

### See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Dennis Marquez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   4/5/19

_____
*Judge's signature*

City and state:   El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Samsung Galaxy Note 8
> SM-N950U, FCC ID: A3LSMN950U
> IMEI: 358503082230229
> **(Target Device);**

**Target Device is** currently in the possession of The Department of Homeland Security, 2051 North Waterman Avenue Suite 100, El Centro, CA 92243, in the Southern District of California.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the device described in Attachment A includes the search of deleted data, remnant data, slack space, and temporary or permanent files contained on or in the device. The seizure and search of the device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the device will be communications, records, or data, including but not limited to emails, text messages, photographs, audio files, videos, or location data, for the period of March 22, 2018 to and including June 22, 2018:

     a.     tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States;

     b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

     c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States;

     d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States;

     e.     tending to identify the user of, or persons with control over or access to, the subject device; and/or

     f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of 21 U.S.C. §§ 952 and 960.**

1

## **AFFIDAVIT**

2      I, Dennis Marquez, Special Agent with the Department of Homeland Security

3  (DHS), Immigration and Customs Enforcement (ICE), Homeland Security

4  Investigations (HSI), being duly sworn, hereby state as follows:

5

### **INTRODUCTION**

6      1.      I make this affidavit in support of an application for a warrant to search the

7  following cellular phone, as further described in Attachment A, and seize evidence of

8  crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960,

9  as more particularly described in Attachment B:

10

> a.      One Samsung Galaxy Note 8 Cellular Phone
> SM-N950U, FCC ID A3LSMN950U
> (**Target Device**)

11

12

13  This search supports an investigation and prosecution of Jhael Paola URIBE-Lopez

14  ("URIBE") for the crimes mentioned above. A factual explanation supporting probable

15  cause follows.

16      2.      Customs and Border Protection Officers ("CBPO") seized the **Target**

17  **Device**, from URIBE's possession at the time of her arrest for importation of heroin

18  and methamphetamine into the U.S. from Mexico on June 22, 2018. Upon arriving at

19  the Port of Entry, HSI Agents took custody of the **Target Device.** The **Target Device**

20  is currently in the possession of DHS and stored in the seized property vault at 2051

21  North Waterman Avenue, Suite 100, El Centro, CA 92243, in the Southern District of

22  California.

23      3.      Based on the information below, there is probable cause to believe that a

24  search of the **Target Device** will produce evidence of the aforementioned crimes, as

25  described in Attachment B.

26      4.      The information contained in this affidavit is based upon my experience

27  and training, consultation with other federal, state, and local law enforcement agents.

28  The evidence and information contained herein was developed from interviews and my

1 review of documents and evidence related to this case. Because this affidavit is made
2 for the limited purpose of obtaining a search warrant for the **Target Device**, it does not
3 contain all of the information known by me or other federal agents regarding this
4 investigation, but only contains those facts believed to be necessary to establish
5 probable cause.

6                                    **EXPERIENCE AND TRAINING**

7      5.      I have been employed as an HSI Special Agent since June 2017.   In
8 preparation for my duties as a Special Agent, I completed the Federal Law Enforcement
9 Training Center Criminal Investigator Training Program and the HSI Special Agent
10 Training Program.

11      6.      I am currently assigned to the Assistant Special Agent in Charge Calexico,
12 California,   Border   Enforcement   Security   Task   Force   (BEST),   Human
13 Smuggling/Human Trafficking Group, and have been so for six months.  As a Special
14 Agent assigned to the BEST Human Smuggling/Human Trafficking Group, I
15 investigate violations pertaining to the smuggling of aliens across the United States
16 Border, the trafficking of aliens for the purposes of prostitution and indentured
17 servitude, kidnapping, rape, and extortion of aliens, narcotics smuggling, and various
18 other crimes related to United States border violence.  During these investigations, I
19 have used, and assisted in the use of, many various kinds of investigative techniques,
20 including the use of cooperating informants, live surveillance, the issuance of grand
21 jury and administrative subpoenas, financial analysis, toll analysis, the search of
22 electronic storage devices and interviews of witnesses, victims and defendants.  Prior
23 to becoming a Special Agent, I was employed as a Deportation Officer with DHS ICE
24 Enforcement and Removal Operations (ERO) from March 2009 to June 2017.   In
25 preparation, I completed the Federal Law Enforcement Training Center Deportation and
26 Removal Operations Training Program.   As a Deportation Officer, I conducted
27 administrative arrests, warrant arrests, and preliminary investigations on various title 8

28

1  US Code violations. In addition, I served in the United States Army for six years,
2  serving as a Team Leader as part of a cavalry support platoon.

3       7. Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I am aware that it is a common practice for narcotics
5  smugglers to work in concert with other individuals and to do so by utilizing cellular
6  telephones, pagers and portable radios to maintain communications with co-
7  conspirators in order to further their criminal activities. Those involved in conspiracies
8  to smuggle and traffic narcotics generate many types of evidence including, but not
9  limited to, cellular phone-related evidence such as voicemail messages referring to the
10  arrangements of travel and payment, names, photographs and videos, text messaging
11  (via SMS or other applications), and phone numbers of co-conspirators. For example,
12  load drivers smuggling controlled substances across the border are typically in
13  telephonic contact with co-conspirators immediately prior to and following the crossing
14  of the load vehicle, at which time they receive instructions on how to cross and where
15  and when to deliver the controlled substance.

16       8. In preparing this affidavit, I have conferred with other agents and law
17  enforcement personnel who are experienced in the area of narcotics investigations, and
18  the opinions stated below are shared by them. Further, I have personal knowledge of
19  the following facts, or have had them related to me by persons mentioned in this
20  affidavit.

21       9. Based upon my training and experience as a Special Agent, and
22  consultations with law enforcement officers experienced in narcotics smuggling
23  investigations, and all the facts and opinions set forth in this affidavit, I submit the
24  following:

25            a. Drug smugglers will use cellular telephones because they are mobile
26              and they have instant access to telephone calls, text, web, and voice
             messages.

27

28            b. Drug smugglers will use cellular telephones because they are able

3

1                    to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.     Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.     The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, videos, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education,

and experience investigating these conspiracies that searches of cellular/mobile telephones, yields evidence:

  a.  tending to indicate efforts to import methamphetamine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute controlled substances within the United States;

  b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

  c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States;

  d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

  e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.  Based on reports provided to your affiant by CBP Officers, on June 22, 2018, at approximately 5:41 p.m., URIBE, a Mexican citizen, applied for permission to enter into the United States from Mexico through the Calexico East, California, Port of

Entry ("POE") vehicle primary lane number six, in the Southern District of California. URIBE was the driver, registered owner, and sole occupant of a silver Dodge Avenger bearing Baja California, Mexico license plates ("the vehicle").

12.　CBPO Velarde was assigned to vehicle primary lane number six at the Calexico POE. CBPO Velarde asked URIBE if she had anything to declare, to which URIBE provided a negative response. CBPO Velarde asked URIBE where she was going, to which URIBE stated she was going to Wal-Mart to return a television. CBPO Velarde conducted routine database record queries which returned a random computer-generated referral for further inspection. This referral is known to CBPOs as a "COMPEX Hit". CBPO Velarde then referred URIBE and the vehicle to the secondary inspection area for further inspection beginning with an x-ray scan of the vehicle.

13.　CBPO Garcia scanned the vehicle with the z-portal x-ray system, which revealed anomalies in the backrest area of the rear seats. Additionally, a Canine Enforcement Officer (CEO) screened the vehicle with his assigned Human and Narcotics Detection Dog, which alerted to the rear seats of the vehicle.

14.　CBPO Ventura, the secondary inspection officer, inserted a tool to probe a section of the rear seat. When the probing tool was removed from the seat, CBPO Ventura noticed a white powdery substance on the portion of the tool that was inserted into the seat. CBPOs proceeded to take apart the seats in the vehicle and extracted a total of seventeen (17) packages wrapped in clear plastic and one (1) package wrapped in vacuum sealed plastic. Seventeen packages weighed approximately 11.08 kilograms and field-tested positive for methamphetamine. The remaining package weighed approximately 1.22 kilograms and field-tested positive for heroin.

15.　Customs and Border Protection Officers ("CBPO") seized the **Target Device**, from URIBE's possession at the time of her arrest. Upon arriving at the Port of Entry, HSI Agents identified the **Target Device**. Prior to seizing the **Target Device**, I was notified by one of the CBPOs that she heard an audible ring and saw notifications displayed on the lock screen of the phone. I viewed the lock screen of the **Target Device**

6

1  and saw messages from someone identified as "Karina" and that 3 messages had been
2  deleted. Based upon my subsequent investigation, I learned that "Karina" is the name
3  of URIBE's ex-girlfriend with whom URIBE was in a relationship at the time she was
4  arrested on June 22, 2018.

5      16.    On June 25, 2018, Peter C. Lewis, United States Magistrate Judge, signed
6  a criminal complaint charging URIBE with the importation of a controlled substance,
7  in violation of Title 21, United States Code, Sections 952 and 960. URIBE was further
8  charged by Information on July 19, 2018, with importation of methamphetamine and
9  heroin. URIBE entered a plea of not guilty. The charges against URIBE have twice been
10  tried to a jury, with both trials ending in a mistrial due to the jury being unable to reach
11  a unanimous verdict. URIBE testified during the first trial and denied knowledge of the
12  drugs in her vehicle. URIBE did not testify at the second trial. A status hearing is
13  currently set before Judge Michael M. Anello on April 8, 2019, to discuss further
14  proceedings.

15      17.    The **Target Device** is password protected. Computer Forensic Agents
16  (CFAs) in September of 2018, and again subsequent to URIBE's first trial, advised that
17  they would be unable to extract data from the **Target Device** without knowing the
18  password. On September 12, 2018, I obtained a warrant to search the SD card[1] found
19  inserted in the **Target Device** [Case No. 18mj10402]. Search of that SD card revealed
20  numerous photo and video files, including photos of URIBE's B1/B2 Visa and the
21  license plate of the Dodge Avenger URIBE was driving at the time of her arrest. Search
22  of that SD card did not, however, reveal any communications, emails, incoming or
23  outgoing calls or similar information ordinarily found on a cellular telephone.

24      18.    I have spoken with Computer Forensic Agents regarding their current
25  ability to obtain and extract data from the **Target Device**. Based on updates to
26  Cellebrite, the forensic software used by Homeland Security Investigations to extract

27
28  [1] An SD Card, or memory card, is a card found in mobile phones, which can be used to store the user's
data, such as music, video, and picture files, from both the camera and from mobile applications.

1   and analyze data from cellular phones, it is believed there are several options now
2   available to obtain data and information from the **Target Device** which were not
3   available in September of 2018 when I obtained the original search warrant for the SD
4   card inserted in the **Target Device**.

5     19. Based on my training and experience, I know that data contained on a
6   cellular phone will remain on the phone indefinitely so long as the phone is not
7   connected to any cellular network. The **Target Device** has remained in the custody and
8   control of Homeland Security Investigations, has not been powered on, and has not
9   connected to any cellular network, since its seizure.

10     20. Based on my training and experience along with other law enforcement
11   officers' training and experience, I know that narcotics trafficking activities entail
12   intricate planning to successfully evade detection by law enforcement. In my
13   professional experience and in the professional experience of other agents with whom
14   I have spoken, this requires planning and coordination in the weeks and often months
15   prior to the event. For example, drug trafficking organizations (DTOs) recruit, evaluate,
16   and supply load drivers with vehicles and phones, and drug smugglers are often asked
17   to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are
18   often unaware of the subject's arrest and will continue to attempt to communicate with
19   the subject after the arrest to determine the whereabouts of their valuable cargo. This
20   communication, both prior to, during and after the event is often
21   accomplished/attempted via cellular telephone communication(s). Therefore, I
22   respectfully request permission to search the **Target Device** for items listed in
23   Attachment B beginning on March 22, 2018, up to and including June 22, 2018.

24              **METHODOLOGY**

25     21. It is not possible to determine, merely by knowing the cellular/mobile
26   telephone's make, model and serial number, the nature and types of services to which
27   the device is subscribed and the nature of the data stored on the device. Cellular/mobile
28   devices today can be simple cellular telephones and text message devices, can include

cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. Aside from the search warrant referred to above in paragraph 17, the United States has not attempted to obtain this information by other means.

**CONCLUSION**

25. Based on all of the facts and circumstances described above, there is probable cause to conclude that URIBE used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952 and 960.

24. Because the **Target Device** was promptly seized during the investigation of URIBE's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by URIBE's possession continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from March 22, 2018 to and including June 22, 2018.

25. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Dennis Márquez
Special Agent

Subscribed to and sworn in my presence this ___5th___ day of April, 2019.


Honorable Ruth Bermudez Montenegro
United States Magistrate Judge

10